UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

IN RE: WELLS FARGO ERISA                     Case No. 16-CV-3405 (PJS/BRT)
401(k) LITIGATION
                                             ORDER

---

Adam J. Levitt, Amy E. Keller, and Daniel R. Ferri, DICELLO LEVITT & CASEY
LLC; Robert K. Shelquist and Rebecca A. Peterson, LOCKRIDGE GRINDAL
NAUEN P.L.L.P.; Greg G. Gutzler, Richard M. Elias, and Tamara M. Spicer,
ELIAS GUTZLER SPICER LLC; W. Daniel "Dee" Miles, III, and Claire E. Burns,
BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.; Samuel E.
Bonderoff, Jacob H. Zamansky, Edward H. Glenn, and Justin Sauerwald,
ZAMANSKY LLC; Michael B. Ershowsky, LEVI & KORSINSKY LLP; Carolyn G.
Anderson, June P. Hoidal, and Devon Holstad, ZIMMERMAN REED LLP; and
Douglas J. Nill, DOUGLAS J. NILL, PLLC, for plaintiffs.

Russell L. Hirschhorn, Howard Shapiro, and Lindsey Chopin, PROSKAUER
ROSE LLP; and Kirsten E. Schubert and Stephen P. Lucke, DORSEY &
WHITNEY LLP, for defendants.

Plaintiffs Francesca Allen, John Sterling Ross, and Mary Lou Shank are current

and former employees of Wells Fargo & Company ("Wells Fargo"). All of them held

Wells Fargo stock in their 401(k) accounts. In September 2016, the price of that stock

dropped sharply—and plaintiffs suffered significant losses—after Wells Fargo and the

United States government announced that thousands of Wells Fargo employees had

engaged in grossly unethical sales practices.

Plaintiffs then brought this lawsuit under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., against Wells Fargo and corporate

insiders who served as fiduciaries of their 401(k) plan.  Plaintiffs alleged that defendants

violated two distinct duties under ERISA—the duty of prudence and the duty of

loyalty—by failing to disclose Wells Fargo's unethical sales practices prior to September

2016.  According to plaintiffs, if defendants had disclosed this information earlier, the

value of the Wells Fargo stock in their 401(k) accounts would not have dropped as

much as it did.

Defendants moved to dismiss plaintiffs' amended complaint.  ECF No. 113.

Defendants argued that plaintiffs' prudence claim should be dismissed because

plaintiffs had not plausibly alleged—as *Fifth Third Bancorp v. Dudenhoeffer*

requires—"that a prudent fiduciary in the defendant's position could not have

concluded that [earlier disclosure of Wells Fargo's sales practices] . . . would do more

harm than good to the fund . . . ."  134 S. Ct. 2459, 2473 (2014).  The Court agreed and

dismissed the prudence claim.  *In re Wells Fargo ERISA 401(k) Litig.*, No. 16-CV-3405

(PJS/BRT), 2017 WL 4220439 (D. Minn. Sept. 21, 2017).

Defendants also argued that plaintiffs had not pleaded "a freestanding claim for

breach of the duty of loyalty."  ECF No. 155 at 15.  The Court agreed that the amended

complaint did not clearly separate the prudence claim from the loyalty claim.  *In re

Wells Fargo*, 2017 WL 4220439, at *7.  The Court therefore dismissed plaintiffs' loyalty

claim but gave plaintiffs leave to replead that claim more clearly in a second amended complaint. *Id.*

Plaintiffs responded by filing a second amended complaint and reasserting their loyalty claim. Defendants have now moved to dismiss that complaint. Defendants argue that the *Dudenhoeffer* pleading standard should be applied not only to prudence claims, but to loyalty claims—and that, under that standard, plaintiffs' loyalty claim should be dismissed for the same reasons that their prudence claim was dismissed. Defendants also argue that, even if the *Dudenhoeffer* pleading standard is not applied to plaintiffs' loyalty claim, that claim should nevertheless be dismissed.

## I. APPLICATION OF *DUDENHOEFFER* TO LOYALTY CLAIMS

Defendants first argue that, even though *Dudenhoeffer* described only what was necessary to plead viable prudence claims, its pleading standard should also be applied to loyalty claims. *See Dudenhoeffer*, 134 S. Ct. at 2464 ("We limit our review to the duty-of-prudence claims."). To fully understand defendants' argument—and why the Court ultimately rejects it—some background is necessary.

Prior to 1995, the federal courts were burdened with a substantial number of abusive securities-fraud actions. The filing of a securities-fraud action seemed to follow on the heels of every substantial drop in the price of the stock of a publicly traded company. Congress eventually concluded that "nuisance filings, targeting of

deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent' had become rampant." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (quoting H.R. Conf. Rep. No. 104-369, at 31 (1995)).

To curb these perceived abuses, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737. Among the PSLRA's features was the imposition of heightened pleading standards on certain securities-fraud actions. *See Dabit*, 547 U.S. at 81-82. As the Ninth Circuit explained, "Congress sought to reduce the volume of abusive federal securities litigation by erecting procedural barriers . . . . such as heightened pleading standards." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977-78 (9th Cir. 1999).

In the wake of the enactment of the PSLRA, the plaintiffs' bar came up with a strategy to evade the heightened pleading standards. That strategy involves "tak[ing] what is essentially a securities-fraud action and plead[ing] it as an ERISA action." *Wright v. Medtronic, Inc.*, No. 09-CV-0443 (PJS/AJB), 2010 WL 1027808, at *1 (D. Minn. Mar. 17, 2010). "Plaintiffs' attorneys are able to evade the PSLRA in this manner—as well as take advantage of the strict duties imposed on fiduciaries by ERISA—by suing not on behalf of those who purchased the stock of a company as members of the investing public, but instead on behalf of those who purchased the stock of a company

as participants in a defined-contribution plan sponsored by that company." *Id.* The

centerpiece of these ERISA stock-drop cases is typically a claim that the fiduciaries of a

401(k) plan breached their duty of prudence by directing the plan to buy or hold shares

of a company's stock, when they knew or should have known that the stock was

overpriced.

As these ERISA stock-drop cases proliferated, federal courts began to have a

number of concerns, including the concern that companies would be deterred from

offering employee stock ownership plans ("ESOPs"). *Dudenhoeffer*, 134 S. Ct. at 2470.

The Supreme Court described this concern as follows:

> ESOP plans instruct their fiduciaries to invest in company
> stock, and [29 U.S.C.] § 1104(a)(1)(D) requires fiduciaries to
> follow plan documents so long as they do not conflict with
> ERISA. Thus, in many cases an ESOP fiduciary who fears
> that continuing to invest in company stock may be
> imprudent finds himself between a rock and a hard place: If
> he keeps investing and the stock goes down he may be sued
> for acting imprudently in violation of § 1104(a)(1)(B), but if
> he stops investing and the stock goes up he may be sued for
> disobeying the plan documents in violation of
> § 1104(a)(1)(D).

*Id.*

To address this concern, many courts held that ESOP fiduciaries who were sued

under ERISA enjoyed a "presumption of prudence." This presumption was "generally

defined as a requirement that the plaintiff make a showing that would not be required

in an ordinary duty-of-prudence case, such as that the employer was on the brink of collapse." *Id.* at 2463.

In *Dudenhoeffer*, the Supreme Court eliminated the presumption of prudence, holding that "the law does not create a special presumption favoring ESOP fiduciaries." *Id.* at 2467. Rather, the Supreme Court said, "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries . . . ." *Id.* The Supreme Court acknowledged the concern that "the threat of costly duty-of-prudence lawsuits will deter companies from offering ESOPs to their employees, contrary to the stated intent of Congress." *Id.* at 2470. But, the Supreme Court said, "we do not believe that the presumption at issue here is an appropriate way to weed out meritless lawsuits . . . ." *Id.*

According to the Supreme Court, a far better "mechanism for weeding out meritless claims" is for defendants to move to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6), and for district courts to rigorously apply the standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Dudenhoeffer*, 134 S. Ct. at 2471. In particular, districts courts must closely examine a complaint that asserts a prudence claim against an ESOP fiduciary to ensure that the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court wrapped up its *Dudenhoeffer* opinion by setting forth various "considerations" intended to guide lower courts in "apply[ing] the pleading standard as discussed in *Twombly* and *Iqbal* . . . ." *Dudenhoeffer*, 134 S. Ct. at 2471. In insider-information cases such as this one—that is, cases in which "a complaint faults fiduciaries for failing to decide, on the basis of the inside information, to refrain from making additional stock purchases or for failing to disclose that information to the public so that the stock would no longer be overvalued," *id.* at 2473—the Supreme Court identified "three points [to] inform the requisite analysis," *id.* at 2472. The third of those points was the following:

> Third, lower courts faced with such claims should . . .
> consider whether the complaint has plausibly alleged that a
> prudent fiduciary in the defendant's position could not have
> concluded that stopping purchases—which the market
> might take as a sign that insider fiduciaries viewed the
> employer's stock as a bad investment—or publicly
> disclosing negative information would do more harm than
> good to the fund by causing a drop in the stock price and a
> concomitant drop in the value of the stock already held by
> the fund.

*Id.* at 2473.

In its earlier order in this case, this Court characterized this more-harm-than-good standard as "very tough" and explained why "plaintiffs will only rarely be able to plausibly allege that a prudent fiduciary '*could not*' have concluded that a later disclosure of negative inside information would have less of an impact on the stock's

price than an earlier disclosure." *In re Wells Fargo*, 2017 WL 4220439, at *2 (quoting *Dudenhoeffer*, 134 S. Ct. at 2473 (emphasis added)). After examining plaintiffs' amended complaint, the Court concluded that "[p]laintiffs have failed to plead specific facts to make plausible their allegation that, under the circumstances of this particular case, a prudent fiduciary 'could not have concluded' that a later disclosure would result in a smaller loss to the Fund than an earlier disclosure." *Id.* at *7 (quoting *Dudenhoeffer*, 134 S. Ct. at 2473). For that reason, the Court dismissed plaintiffs' prudence claim.

That brings us to plaintiffs' loyalty claim. Defendants concede that *Dudenhoeffer* was explicitly limited to prudence claims. But, say defendants, just about any prudence claim can easily be recast as a loyalty claim. That is particularly true in insider-information cases. By definition, these are cases in which the defendant was a corporate insider who served as the fiduciary of an ESOP plan, the defendant received negative inside information about the company, and the plaintiff alleges that the defendant breached the duty of prudence by not disclosing or otherwise acting upon that inside information. In that context, defendants argue, turning a prudence claim into a loyalty claim requires nothing more than adding the allegation that, in failing to disclose or otherwise act upon the inside information, the defendant was motivated by a desire to protect his position as a corporate insider.

To this point, the Court agrees with defendants.  And the Court also agrees with defendants that—given how easy it is for a plaintiff to convert a prudence claim into a loyalty claim in an insider-information case—the Supreme Court would have as much concern about these loyalty claims as it had about the prudence claims in *Dudenhoeffer*. After all, these loyalty claims place ESOP fiduciaries "between a rock and a hard place" in the same manner as the prudence claims discussed in *Dudenhoeffer*.  134 S. Ct. at 2470. And thus, these loyalty claims will deter companies from offering ESOP plans unless district courts apply a "mechanism for weeding out meritless claims."  *Id.* at 2471.

Here, however, is where this Court and defendants part ways:  Defendants argue that this Court should apply the same "mechanism" for weeding out meritless loyalty claims that *Dudenhoeffer* said should be applied for weeding out meritless prudence claims.  In particular, defendants point to the Supreme Court's admonition that, in inside-information cases, "lower courts . . . should . . . consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases . . . or publicly disclosing negative information would do more harm than good to the fund . . . ."  *Id.* at 2473.  Defendants urge that this more-harm-than-good standard should be applied to *both* prudence *and* loyalty claims. Given that the Court has already held that plaintiffs' prudence claim does not meet the

standard, defendants argue, the Court must dismiss plaintiffs' loyalty claim for the same reason.

The problem with defendants' argument is that it wrenches the more-harm-than-good standard out of context. The Supreme Court was very clear in *Dudenhoeffer* about how district courts should weed out meritless prudence claims: by rigorously applying the *Iqbal/Twombly* plausibility standard. And this Court is confident that, if faced with the question, the Supreme Court would hold that district courts should weed out meritless loyalty claims in the same way: by rigorously applying the *Iqbal/Twombly* plausibility standard. But a judge who is applying the *Iqbal/Twombly* standard to a *loyalty* claim must necessarily ask different questions than a judge who is applying the *Iqbal/Twombly* standard to a *prudence* claim, for the simple reason that the elements of the two claims are not the same.

The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This is an objective standard; the subjective intentions of the fiduciary are irrelevant. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). Thus, a plaintiff who brings a prudence claim must plead and prove that a hypothetical prudent person would not have acted

as the fiduciary did under the same circumstances.  *See Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-918 & n.3 (8th Cir. 1994) (stating that it was "improper[]" for the district court to "appl[y] a subjective test to the trustees' conduct").

By contrast, the duty of loyalty requires fiduciaries to act "for the exclusive *purpose* of . . . providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1)(A)(i) (emphasis added).  This is a subjective standard; what matters is *why* the defendant acted as he did.  *See A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1073 (D. Or. 2016) (noting that the duty of loyalty "looks to the fiduciary's subjective motivation in determining whether the fiduciary is in compliance with the rule").  Thus, a plaintiff who brings a loyalty claim does not have to plead or prove anything about what a hypothetical prudent person would have done under the same circumstances; instead, the plaintiff must plead and prove that the defendant acted to further his own interests rather than the interests of the fund.

To illustrate:  Suppose that two corporate officers serve as fiduciaries of an ERISA plan that exclusively holds their company's stock.  Both fiduciaries receive inside information that one of the company's key products is defective and will likely have to be recalled.  Both fiduciaries also know that when this information is ultimately disclosed, the price of the company's stock will plummet.  Both fiduciaries decide to delay the disclosure of the defect to the public.  The first fiduciary delays disclosure

because he sincerely believes that a later disclosure will result in less of an impact on the price of the company's stock—and thus less of an impact on plan participants—because the company will be able to pair the announcement of the defect with an announcement of a specific plan to remedy the problem.  The second fiduciary delays disclosure because he is scheduled to receive a bonus of 100,000 shares of company stock at the end of the year, and he does not want the price of the company's stock to drop until he gets and sells those shares.

In this hypothetical, a plaintiff bringing a prudence claim against the two fiduciaries would have to plead and prove that a prudent person would not have delayed disclosure of the defect.  If the plaintiff did so, both fiduciaries could be found to have breached the duty of prudence; if the plaintiff failed to do so, neither fiduciary could be found to have breached the duty of prudence.  The good intentions of the first fiduciary—and the bad intentions of the second fiduciary—would be irrelevant.

By contrast, a plaintiff bringing a loyalty claim against the two fiduciaries would have to plead and prove that the *reason* that a particular fiduciary delayed disclosure of the defect was to further his own interests, rather than the interests of the fund participants.  Because the first fiduciary acted in subjective good faith, he could not be found to have breached the duty of loyalty.  But because the second fiduciary did not act in subjective good faith, he could be found to have breached the duty of loyalty.  *See*

*Tussey v. ABB, Inc.*, 850 F.3d 951, 958 (8th Cir. 2017) ("A fiduciary can abuse its

discretion and breach its duties by acting on improper motives, even if one acting for

the right reasons might have ended up in the same place.").[1]

It makes sense, then, that a judge who is applying the *Iqbal/Twombly* plausibility

standard to a prudence claim would ask "whether the complaint has plausibly alleged

that a prudent fiduciary in the defendant's position could not have concluded that

stopping purchases . . . or publicly disclosing negative information would do more

harm than good to the fund . . . ." *Dudenhoeffer*, 134 S. Ct. at 2473. At the heart of any

*prudence* claim is the question of what "a *prudent* fiduciary in the defendant's position"

could have done. But it makes no sense for a judge who is applying the *Iqbal/Twombly*

plausibility standard to a *loyalty* claim to ask what "a prudent fiduciary in the

defendant's position" could have done. That is irrelevant to a loyalty claim—which,

---

[1]At oral argument, defendants agreed with this description of the contrasting nature of prudence and loyalty claims. *See* ECF No. 209 at 3-6. In their brief, however, defendants cite *In re Target Corp. Securities Litigation*, 275 F. Supp. 3d 1063, 1089 (D. Minn. 2017), to argue that the duty of loyalty standard is objective. ECF No. 198 at 21 n.9. But when the Court reads *In re Target* in context, the Court believes that the order was simply making the point that a fiduciary's decision should not be deemed disloyal just because it turns out to be a poor decision in hindsight. *In re Target*, 275 F. Supp. 3d at 1089. To the extent that *In re Target* suggests something more—specifically, that whether a defendant has breached the duty of loyalty is evaluated under an objective standard—the Court respectfully disagrees, for the reasons described above. The only authority cited by *In re Target* in support of its statement that the duty of loyalty standard "is objective" is *Braden*. But *Braden* does not say that the duty of loyalty is objective; instead, *Braden* says that ERISA's "*prudent* person standard is an objective standard." *See Braden*, 588 F.3d at 595 (citation omitted and emphasis added).

again, turns not on whether the fiduciary acted prudently, but on whether the fiduciary acted "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Hence, when defendants demand that this Court apply the more-harm-than-good standard to plaintiffs' loyalty claim, defendants are demanding that plaintiffs be required to *plead* something that they are not required to *prove*. The law imposes no such requirement.

In sum, the Court finds that the concerns that *Dudenhoeffer* expressed about prudence claims apply with equal force to loyalty claims, and therefore that judges must be as concerned about weeding out meritless loyalty claims as they are about weeding out meritless prudence claims. The Court also finds that the "mechanism for weeding out meritless claims" described in *Dudenhoeffer*—a rigorous application of the *Iqbal/Twombly* plausibility standard—should be applied to both loyalty and prudence claims. *Dudenhoeffer*, 134 S. Ct. at 2471. This means identifying the elements that the plaintiff must prove to recover on the particular claim and ensuring that, with respect to each of those elements, that the complaint pleads "enough facts" so that it "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II. APPLICATION OF *IQBAL* AND *TWOMBLY* TO
## PLAINTIFFS' LOYALTY CLAIM

Applying the *Iqbal/Twombly* standard to plaintiffs' loyalty claim, the Court finds

that the claim is not plausible, and thus the Court dismisses it.

To begin, the second amended complaint alleges that the individual defendants

breached their duty of loyalty by "fail[ing] to avoid conflicts of interest." ECF No. 186

¶ 315. It further alleges that defendants were "Wells Fargo officers, employees, and

Board members" who "were incentivized to avoid doing or saying anything that would

harm the image or reputation of Wells Fargo . . . because doing so would be reasonably

likely to damage their relationships within Wells Fargo and on the Board, and thus

harm their own careers or their places on the Board." *Id*. ¶ 317. But "the mere fact that

a fiduciary had an adverse interest does not by itself state a claim for relief." *Morrison v.*

*MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1058 (D. Minn. 2009). Specifically, ERISA

does not prohibit corporate officers from also serving as fiduciaries of ESOPs. On the

contrary, "[p]ersons who serve as fiduciaries may also act in other capacities, even

capacities that conflict with the individual's fiduciary duties. What ERISA requires is

that the fiduciary with two hats wear only one [hat] at a time, and wear the fiduciary

hat when making fiduciary decisions." *Trustees of the Graphic Commc'ns Int'l Union*

*Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir.

2008) (citation and internal punctuation omitted).

Plaintiffs concede that a fiduciary may serve as an officer or employee of a company without violating ERISA, but they claim that defendants went beyond serving dual roles and breached their duty of loyalty by "failing to disclose" "material information" about ongoing misconduct at Wells Fargo. ECF No. 186 ¶¶ 321-22. But this allegation still falls short of the mark. This Court has previously held (following the lead of many other courts) that ERISA should not be read to impose "an affirmative duty on a corporate insider who acts as a fiduciary of a defined-contribution plan to disclose to plan participants nonpublic (i.e., 'inside') information about the corporation that might affect the value of the corporation's stock." *Wright v. Medtronic, Inc.*, No. 09-CV-0443 (PJS/AJB), 2011 WL 31501, at *7 (D. Minn. Jan. 5, 2011). Rather, "ERISA and the securities laws should be confined to their respective spheres." *Id.* "ERISA defines when a fiduciary must disclose plan- and benefit-specific information that is of interest to plan participants but not to investors generally," and "the securities laws define when general financial and corporate information must be provided to the investing public—including, but obviously not limited to, plan participants." *Id.*

In this case, plaintiffs do not claim that defendants misled them about "plan- and benefit-specific information," such as the terms of Wells Fargo's 401(k) plan. *Cf. Braden*, 588 F.3d at 598-600 (8th Cir. 2009) (upholding a nondisclosure claim alleging that fiduciaries failed to disclose material information about plan fund fees and kickback

payments).  Instead, plaintiffs claim that defendants failed to disclose inside corporate

information "that might affect the value of the corporation's stock"—information that

would be of interest to every member of the investing public.  *Wright*, 2011 WL 31501, at

*7.  As the Court held in *Wright*, defendants have no duty under ERISA to disclose that

information; any such duty would arise under the securities laws, and, if defendants

have acted wrongly, they can be held accountable under those laws.  *Id.*  Therefore, to

the extent that plaintiffs' loyalty claim relies solely on defendants' nondisclosure of

inside information about Wells Fargo's present and future financial condition, plaintiffs'

loyalty claim must be dismissed.

A few paragraphs in the second amended complaint could be read as alleging

that defendants breached their duty of loyalty not merely by failing to disclose inside

corporate information, but also by making affirmative misrepresentations to the general

public.  *See, e.g.*, ECF No. 186 ¶¶ 146, 170-73, 322.  And certainly, a fiduciary "may not

affirmatively miscommunicate or mislead plan participants about material matters

regarding their ERISA plan when discussing a plan."  *Kalda v. Sioux Valley Physician

Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) (citation and internal quotation marks

omitted).  But this does not save plaintiffs' loyalty claim from dismissal for several

reasons.

First, the Court is not sure whether plaintiffs actually mean to pursue an affirmative-misrepresentation claim. In their brief, plaintiffs argue only that defendants breached their duty of loyalty "[t]hrough their silence and inaction." ECF No. 202 at 23.

Second, if plaintiffs intended to plead an affirmative-misrepresentation claim, then they have abandoned it. Defendants' opening brief argued that any allegation in the second amended complaint that defendants had "acted disloyally by making misrepresentations" was insufficient to state a claim for relief. ECF No. 198 at 23-24. Plaintiffs said nothing in response to that specific argument. In fact, plaintiffs' response brief uses a form of the word "misrepresent" only twice—once in a string cite for the proposition that "courts have upheld conflict of interest claims," and once in a string cite for the proposition that "Eighth Circuit precedent recognizes the ability, and even the obligation, of fiduciaries to disclose material facts to ERISA beneficiaries." ECF No. 202 at 21-24.

Third, although a few paragraphs in the second amended complaint could be read as alleging that defendants made affirmative misrepresentations, nothing in the complaint could be read as alleging that defendants made such misrepresentations *in their fiduciary capacity*. Public filings or communications that are "made in a company's corporate capacity—and not in its capacity as an ERISA fiduciary—. . . do not, without more, constitute fiduciary communications." *Morrison*, 607 F. Supp. 2d at 1054. The

second amended complaint alleges that defendants misled the general public in a media interview, *see* ECF No. 186 ¶ 146; in Financial Industry Regulatory Authority ("FINRA") forms, *id*. ¶ 170-71; and in a press release, *see id*. ¶¶ 172-73.  None of these are plausibly alleged to have been fiduciary communications.

Fourth, the second amended complaint does not allege that plaintiffs chose to continue holding Wells Fargo stock in their 401(k) account *because* of any affirmative misrepresentation made by defendants.  At best, the second amended complaint only makes the general and conclusory allegation that plaintiffs "lost a significant portion of their retirement investments" "[a]s a direct and proximate result of Individual Defendants' fiduciary duty breaches."  *Id*. ¶ 323.  This allegation does not make plausible any allegation of reliance.  As this Court has previously noted, "for plaintiffs to recover for defendants' alleged misrepresentations to Plan participants, they must show that a loss 'result[ed] from' the misrepresentations."  *Wright*, 2011 WL 31501, at *4 (quoting 29 U.S.C. § 1109(a)).  It is difficult to see "how a loss could have 'result[ed] from' a misrepresentation made to a Plan participant unless that participant read and relied on the misrepresentation."  *Id.*

Fifth, and finally, the Court is skeptical that the alleged misrepresentations identified in the second amended complaint are actionable.  For example, plaintiffs allege that Wells Fargo falsely represented that it had taken "deadly seriously" the

accusation that its employees had pushed unwanted products on customers. ECF No. 186 ¶ 146. This representation seems to be more of an (unprovably false) statement of opinion rather than a (provably false) statement of fact.

In short, plaintiffs allege that defendants acted disloyally by failing to avoid conflicts of interest, by failing to disclose inside corporate information to plan participants, and (perhaps) by affirmatively misleading the general public. For the reasons explained above, these allegations are insufficient to make plausible the claim that defendants breached their duty of loyalty under ERISA. Therefore, plaintiffs' loyalty claim is dismissed.

### III.  OTHER CLAIMS

In Count II of their second amended complaint, plaintiffs replead their previously-dismissed prudence claim solely for the purpose of preserving it for appeal. The Court again dismisses this claim for the reasons stated in its previous order. *See In re Wells Fargo*, 2017 WL 4220439, at *3-7.

Counts III and IV of the second amended complaint are entirely derivative of Counts I and II in that they allege that if one or more defendants breached the duty of loyalty or prudence, other defendants should also be held liable for that breach. Given that the Court has held that plaintiffs have failed to plausibly allege that any of the defendants breached their fiduciary duties under ERISA, Counts III and IV also fail.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1.    Defendants' motion to dismiss plaintiffs' second amended complaint [ECF No. 196] is GRANTED.

2.    Plaintiffs' second amended complaint [ECF No. 186] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 19, 2018                              s/Patrick J. Schiltz
                                                   Patrick J. Schiltz
                                                   United States District Judge